The Honorable Judge of the United States Court of Appeals in and for the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to drive their attention as the Court is now sitting. Good morning, Judge Ripple. Good morning, Judge Wood. Good morning. Good morning. Good morning to everyone in the courtroom. Happy to have every one of you here with us today. And the first case of our day is 22-1845, United States of America v. Doe Corporation. And is that you, Mr. Feigen, that we see? Yes, Your Honor. Go ahead. Any time you're ready is fine. Thank you, Judge Ropner. And may it please the Court. Beyond the direct relevance of the evidence that the grand jury in this subpoena in this case seeks, the purpose of determining the admissibility of the evidence and what happened of the evidence uncovered in the search and what happened in the search is not only a permissible purpose, it's a beneficial purpose. Nobody benefits from an indictment here that is going to publicly identify Doe Corporation and accuse it of crimes only to see that indictment dismissed. Just because the grand jury doesn't have to consider the admissibility of evidence doesn't mean the grand jury is disempowered from considering the admissibility of evidence. And it would be very useful for the grand jury to be able to do that here in order to, I think, stop this case where it properly should stop. And we've acknowledged that that is our principal reason for seeking it. So, Mr. Feigin, are you equating, for purposes of this argument, this part of your argument, a broader inquiry into the question whether there was governmental misconduct with admissibility of evidence? Are those one and the same? Well, Your Honor, I think they could, in theory, be distinct. And if they were distinct and the only issue might be potential civil liability, then I think this would be a different case. But the representations we have from the defense are that what happened in – not the defense, but the representatives of the target of this particular subpoena, subject to this particular subpoena – is that what happened during the search would be grounds for suppressing the evidence. And if that's – particularly if that's so, it really does bear on the grand jury's dual purpose, one of which is to determine probable cause, but the other of which is to determine whether an indictment is well-founded and express the sentiment of the community. They don't do that in every case, but it's not inappropriate for them to seek this evidence, and it would be beneficial for them to do so in this case. But other than sheer speculation, is there any reason to believe that the video evidence could reveal evidence that would relate to Doe Corporation's criminal liability as opposed to the potential civil or criminal liability of the agents for the – well, for the manner in which they executed the search warrant? Your Honor, I'm not sure because we haven't seen the video exactly what areas the video covers, but I do think there is at least a reasonable possibility under the Our Enterprises standard that the video contains some evidence about, for example, who was last at the records that we looked at or who may have gone and accessed them during the search or who was where or who was doing what. I mean, all of those things could potentially be relevant. Now, they point out that the agents asked that the video be turned off, and that's because they balance more heavily the ex-ante safety and possible evidence tampering reasons not to have concurrent video monitoring of a search on, but that doesn't mean that the search would not have any direct relevance. I think it's just important to note that the reasons why grand juries don't have to consider admissible evidence either don't apply to whether they can or actually cut in favor of whether they can. The principal reasons are that you don't want to bog down the grand jury investigation with a lot of judicial hearings and that you want to maintain grand jury secrecy. And, of course, both of those things I think cut in favor of our approach here. And another reason, this is at page 433 of the Supreme Court's decision in cells, is because we would expect that if there isn't enough admissible evidence to indict, the prosecutor is not going to indict. And, of course, that practice is enshrined in the Justice Manual as well. So, can you tell me this? Do we review the decision to quash only for abuse of discretion? And if so, even if we might have ruled differently, how would it be an abuse of discretion to consider the evidence sought here to be unrelated to the criminal investigation of Joe Corporation and related instead, I suppose, to the ability of the government to prove admissibility, which, of course, would be a matter for the government's trial preparation, but not one that would be committed to the grand jury. Well, Your Honor, I guess I would say a few things about that. Number one, just to clear up the standard of review, it's going to be generally abuse of discretion, but clear error for factual findings. I don't think there's any dispute about the factual findings. We don't disagree with them on any of the court trials. How about the determination of the district court that this was for the purpose of the government's civil trial preparation? Is that a finding of fact that we're bound by? The other aspect of the standard of review is that an error of law, of course, would be ipso facto an abuse of discretion. And I think the finding that this was for trial preparation or for an improper purpose flowed from the entire decision flows from the incorrect legal premise that this is, in fact, an improper purpose. As a threshold matter, I'm not actually certain that it makes any sense to say that this is for an improper purpose. And Judge Rovner, this goes again to your question, that this is for an improper purpose if simply another prosecutor could easily have sought it under the exact same circumstances. But in any event, I think the principle premise, the animating premise of the district court's entire opinion is that grand juries simply aren't allowed to seek evidence for this purpose. Evidence for trial preparation, of course, is going to be part and parcel with almost anything the grand jury gathers. I mean, everything that they gather could potentially be useful for trial. And that's obviously true of this as well. And one of the problems with kind of flyspecking this sort of thing, and one of the reasons there's very light judicial review of grand jury determinations or of grand jury subpoenas is because, which start as presumptively reasonable, is because a lot of evidence is intertwined. It can have inculpatory purposes, exculpatory purposes, admissibility. It would have been proper for the grand jury to say, viewing all of this evidence, yeah, there probably was a violation of the Clean Water Act here, but given the government's misconduct, we're going to ignore it. Can they choose to ignore a violation of law? I believe that would be within their power to do, Your Honor. I think if they saw the video and were sufficiently disturbed by it and just decided not to indict. I will add that as a precedent. Can I just interrupt and ask you, following up on that point, the Doe Corporation characterizes what Judge Ripple just outlined as a form of nullification, right? You know, the grand jury sees this. They think there might be a violation. They're perhaps probable cause to think there's a violation of the Clean Water Act. But in light of government misconduct, they say, we're not going to return a true bill. Would you call that nullification, or is that somehow? Nullification has an air of illegitimacy to it, and so that's why I want to explore that thought a little bit. Yeah, Your Honor, I don't know that I'd use that particular word. I think the grand jury is entitled to take into account the sentiment of the community and the surrounding circumstances of which it's aware and decide not to indict even if it has probable cause. And this is reflected in our own justice manual practices, which, for example, require, I think this is 9-11-232, require that if we have some direct exculpatory evidence that we actually present it to the grand jury, we are also required to allow the target of the investigation to testify if he or she or it desires. It would probably have a human representative, and presumably what that testimony would be about would be largely exculpatory. I guess what you're suggesting is that there's a second reason. There's one reason a grand jury might choose not to indict, might refer to government misconduct. Another reason a grand jury might choose not to indict might be because it has weighed the evidence. It's seen exculpatory evidence. It's seen inculpatory evidence, and it just doesn't see enough to satisfy it that an indictment is a proper thing. Yeah, and it gets uncomfortable. Honestly, it gets uncomfortable, the case. But if I could make just two points about that, one is as a practical matter, it probably wouldn't get to that point because once the prosecutor sees the discomfort. For example, if the video were played here and the prosecutor saw the discomfort of the grand jury with it, the prosecutor might well not even ask for an indictment. We have no interest in charging people with crimes that we can't prove beyond a reasonable doubt to a jury. That's enshrined in the Justice Manual, too. But the second thing I'd add is I do think there may be some limits to what a grand jury can do. They're applying the sentiment to the context of the case. And so they're obviously entitled to do, I think, the kinds of things you were just describing, Judge Wood. But I don't know that they can do things that are just unconnected to the case. But I wouldn't call it nullification. They're just exercising the other part of their dual role. I apologize if I cut you off, Judge Ripple. I would like to reserve some of my time. You will get your time. Have no fear. Thank you. Thank you, Judge Ripple. I must say I was rather taken aback when I first opened the briefs and I find out this was a multi-agency deal with ICE is there and these guys are in fatigues and everything else. Is this the way we go about Clean Water Act search warrants? It just seemed to me odd. Your Honor, my understanding is it truly was a manpower issue. And I think the thing that crystallized it for me at least is EPA just does not have a large boots on the ground presence in Milwaukee. So they needed to recruit some other agents for the search. We see a decent number of cases where there's a clear government, whether it be federal or state, overreaction in these situations. And that's why I ask. Yeah. And, Your Honor, I think if you did have that instinct, I mean, I would try to urge you not to have it. But if I'm unable to do that, I do think the proper forums for litigating that, I mean, one might be any civil suit that they might bring. Or second, if we did wind up having an indictment in this case, notwithstanding the receipt of the video and any potential further proceedings that go along with that, then they would presumably move for a motion to suppress on grounds of government misconduct. And they could raise all of the allegations in that forum. It may actually be to your benefit in this case, I suppose, because there's more of a case that the Department of Justice may want this thing to look at misconduct because they actually thought there was some. Yeah. Your Honor, I mean, we take the allegations very seriously. That is why we, the principal reason why we want this material. And we don't want to bring a case that is either going to get dismissed or that we have discomfort about, even if it's a case where we do think that we could obtain a conviction. What was the lead agency? I mean, the lead agency here is the EPA because they're the ones that would investigate the Clean Water Act violations. I mean, you have a lot of workers in the foundry, and there are any number of reasons why you'd want some more boots on the ground. If you look at paragraph 15 of the search warrant, you'll see that there was some reason at the time to suspect that there might be some firearm parts there. That was another reason why you might want to have more agents in the area. But honestly, Your Honor, the reason I cannot spend a lot of time telling you exactly what happened in the search and why it was necessary to have that many agents there is because the best evidence of that is evidence that we haven't been allowed to see. I'm not quite sure why we're fighting about this. If it truly does reveal misconduct, we would really like to see it, and I'm not certain why the subpoena is being resisted. But we certainly think that the grand jury is entitled to see it, and that's what we're asking for here. If the court has no further questions, on the understanding I may have, like, a few seconds left. No, you have four minutes left. Thank you, Your Honor. I very much appreciate it, but I won't. Every case is important, and we have peppered you with questions. Well, thank you, Your Honor. I won't take up more of the court's and all these other attorneys' time if the court has no further questions right now. Thank you. Morning, Mr. Kravitz. May it please the Court, I'm Stephen Kravitz, and I'm not just arguing this case. I am the defense lawyer below and was hired an hour into the search. So the first thing I'm going to do is something I've never done in the Court of Appeals. I'm going to move to strike his comments about paragraph 15 of the search warrant affidavit, which I have not seen, you have not seen, and is still under seal and was not submitted to Judge Stadmiller. And that is the problem with this case. The problem with this case is we are on an abuse of discretion standard. That's what this is about. But you do agree, I take it, Mr. Kravitz, that under the Supreme Court's guidance, an abuse of discretion does also include application of an incorrect rule of law. Yes, except that it didn't, Judge Stadmiller didn't apply an error. Well, but Judge Stadmiller pretty clearly thought that anything beyond simply an investigation of whether the Clean Water Act was violated was beyond the scope of the grand jury's power to inquire into. And thus the grand jury could not consider the fact that there might have been government misconduct. The grand jury apparently can't consider a whole set of things. And I have problems with that sweeping rule. Well, first of all, ma'am, I'm sorry that you have a problem with that because that isn't what he said. What he said was he asked the government, what is it that you want me to look at? And the government made a submission below which did not include the reasons they're talking about now. In footnote four, Judge Stadmiller says, if the government wished for the court to consider how the footage might relate to another crime, it ought to have stated so in its briefing. That's a different thing, another crime, as opposed to misconduct.  And he's talking about another crime. So maybe, you know, the Solid Waste Disposal Act or maybe something else. What he doesn't seem to think is that it would be legitimate for the grand jury to decide not to indict because of concerns about government misconduct. How would the grand jury learn about government misconduct? There is no obligation to present this tape if they get it to the grand jury in any form. Why wouldn't the possibility of government misconduct in the execution of a search warrant be a proper consideration for a grand jury? I mean, couldn't it potentially reveal tampering with evidence, for instance? Sure, but the precedent is that illegally obtained evidence does not have to be presented to the grand jury. Exculpatory evidence does not have to be presented to the grand jury. But that's must, and what we're talking about is may. And the thing is, there are a number of ways. In this case, maybe it happens to be a video. There are a number of ways that government overreach can come to the attention of a prosecutor presenting a case to a grand jury. And the fact that you're saying that the grand jury cannot look at this is, I think, an overstatement. Oh, no, I'm not saying that at all. I'm saying the government already has a picture of their agent pointing a gun at a worker. It has a picture of the brown-faced people being gathered in front of an ICE agent. And it has the evidence that agents went in without knowing that the plant might explode. So, the need to look at this thing in the full context, I'm just surprised. And, actually, my guess is that the overwhelming majority of people who are the targets of grand jury investigations would like a rule of law similar to the one that the Supreme Court articulates in our enterprises, that any information relevant to the general subject, not just to the crime, not just to that, is cognizable. They would like the grand jury to be able to exercise its public function of deciding not to issue an indictment. And, for some reason, your company doesn't take that view. That's fine. That's your prerogative. Well, no, I don't think that's the law. The question is whether or not there's probable cause to believe that person's committed a crime. That's the our enterprise's standard. And then the enterprise says, whereas subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines there's no reasonable possibility that the category of materials will produce information relevant to the general subject. And the subject of the investigation is, should we return an indictment based on these alleged crimes? You see, even absent any allegation of improper behavior in the execution of a search warrant, wouldn't video evidence of the execution of a search warrant be a category of evidence that has a reasonable possibility of yielding evidence that's relevant to the, you know, general subject of the investigation? Look, it seems to me it could provide insight into where items were found, who might have had access to it. Why wouldn't, in your view, why wouldn't that be enough to establish relevance? There is no equality between the government's investigation and a defense to something we don't even know. It's all a one-way street. A search warrant was executed. It was executed badly. The government lied in its paperwork that nobody was pointed a gun at, and they were. We don't think there is good faith on the government's part on how they're going to deal with this information. So why should this beleaguered company once again succumb to what is an unreasonable request? And it's because this evidence— But why isn't this a way for you not to get indicted? Surely your client doesn't want to be indicted. Because we don't trust them. We've asked them. We said, decline the case. We'll give you the tape. They won't. They won't show us the search warrant affidavit. Why would they do that ex ante, though? Why would they do that before they see it? Because you're assuming a lot of good faith here that we don't assume. I'm assuming that we don't know what's in this video. That's all I'm assuming. You know four pictures of it. We don't know the whole video. And, of course, you'd be the first to be arguing for full context of any kind of document, whether video or written. If you look at the grand jury subpoena itself, which is Exhibit A to our brief in the trial court and is part of the record, you will note that the return is to the agent who swore out the search warrant affidavit and conducted the search. So the fox is in the henhouse? We're supposed to give this evidence to the same people who violated our rights? Or there's a way to make this subpoena work. But you know what's in the evidence. What could they do to it that you wouldn't have full information about? It's not inculpatory. It's not exculpatory. Well, that's what you say. They want to see it. Well, they told us to rip the cameras off the wall if we didn't turn them off. Why should they get evidence that they themselves tried to prevent? It's so they can put their story straight. That's why they want it. They want it to privately make their stories and say, oh, there's no violation here because now we're all on the same page. We know what we did. We know what their evidence is, and we don't care. We're fine. Can you help me, please, Mr. Kravitz? Okay. The court dismissed the relevance of the security footage in part by stating that the agent's own affidavits and testimony would provide any needed context for the search. But it seems to me that if testimonial evidence from the agents as how the search was conducted, I mean, if that evidence would be relevant, then security footage showing how the search was conducted should be relevant as well. I mean, there's no requirement that evidence that is sought in a subpoena not be cumulative or overlap with other evidence. And video evidence would be more reliable than the recollections of these agents on the scene. So for me, and you help me, the court's own statement regarding the ability of the agents to testify as to such matters reveals the relevance and would support the subpoena. What it would support is their ability to get their story straight by using this and deny the defendant the ability to use it to cross-examine them. The standard of review here is abuse of discretion. All of this was supposed to be put before Judge Stadmiller. They did not do that. They've tried to buttress that record on this appeal. They can't do that. This is a reasonable exercise. To determine reasonableness, you need facts. The facts are what the government supplied. We had no facts other than the tape because we haven't seen the search warrant affidavit. In what way do you say they have buttressed on the appeal at this point? And why would you not be able to compare version A to version B to version C? I don't understand your argument here at all. Version A. You know what they've said now. Oh, I don't know what they've said. Well, yes, you do. You know what they're saying in court today. Exactly. You know what they said in their brief. I know what they said to the court below, and it was wanting. And you know what they said in their brief here, and you know what they've said in the court today. Correct. So if you think that their account of reasons or anything pertinent to this case shifts after looking at the video, that will be evident to you. I guess I apologize. I just have to say what they are trying to do is change a standard to loosen our enterprises even further by saying what they want you to find is that the general subject of whether to issue an indictment is fair game for a grand jury subpoena. And that's anything. That's anything. There's no stopping. Well, it has to pertain to the investigation. It has to pertain to the trial. It does. I don't think it's anything. No, no, it's the general subject. The general subject of the grand jury's investigation are the words of the Supreme Court. Yeah, but their words in their brief is the general subject whether to issue an indictment. Yeah. That is anything. What about Calandra? I mean, you know, there are a whole line of Supreme Court cases that talk about the historic purpose of the grand jury, the link to the community that the grand jury provides. And I'm perfectly well aware, given my own experience at the Justice Department, that grand juries are run by prosecutors, so to speak. A prosecutor is going to decide what to present to the grand jury. The prosecutor plays a big role in it. But it's nonetheless an independent institution. And if it doesn't return an indictment, there's no indictment. Okay. And what they're talking about here, look, it seems that a subpoena has to be considered relevant if there's any reasonable possibility. We're talking, you know, about possibilities that the category of materials, and here that would certainly seem to be the security footage of the search, if it will produce information relevant to the general subject of the grand jury's investigation. Wow. I mean, that is a broad definition, is it not? It is. But what is being proposed here is know that anything goes. I mean, look, we're here on an abuse of discretion. Judge Stadmiller heard all this. And your Biebers case says, we reversed the district court only when no reasonable person could take the view adopted by the trial court. That's a 2021 case by Judge Kirsch. And can you say that Judge Stadmiller didn't take a reasonable position, that he didn't consider reasonable things? He stated all the standards completely correctly, and he did not abuse his discretion. The government is here to make this change in order to expand what they do and to have less oversight. The challenge was timely made and briefed, and the government had every opportunity to make its case at briefing and even at some kind of in-camera meeting, which our enterprises also talks about and which the government did not avail itself of. I very much appreciate your responding to my last query regarding the court's own statement regarding the ability of the agents to testify. So the point would be, we should give over in a grand jury subpoena information that was not supposed to exist by the agent's order to the agents so that when they testify, they can testify consistently. I mean, this to a target of an investigation who doesn't even know what he's being investigated for other than five water samples, which, by the way, were negative. I'm sorry, I don't see how the government, having made such a terrible record below, can come here and say what now we want is that as long as it's involving the general subject matter, whether to issue an indictment, which is anything, and those are their words, then this court should bless it. Grand jury practice is not very usual for people. Not many people have been in there. I think of only the three of us in this room who are arguing have actually been in a grand jury or handled a grand jury. Are you kidding? At least two of us have been. Yes, I'm talking about you, Judge, and this judge. I mean, in background, you guys are AUSAs at one time. Right. So I'm assuming you did that. I was an AUSA at one time. I taught grand jury practice at the Justice Department when I was an AUSA, and it's the prosecutor. It is not the grand jury that does anything. How many no bills did you see in all your time? Well, so you will remember then that under United States Against Cells Engineering, it's permissible for a prosecutor to recommend to the grand jury to dismiss an indictment for lack of admissible evidence. But you don't think it's impermissible for the grand jury itself to consider whether there's enough admissible evidence. If they submit it, they don't have to submit it. Declining a case as the prosecutor is not really a grand jury. I mean, in four years, I remember one no bill, and it was a case that the AUSAs set up to no bill, to get the agent out of their hair. That's what happens in an actual real grand jury. And here, they want this information so they can smooth out the defense to their stories, whether they decide to go forward or if there's going to be a civil case, which we've given that claim. And it's kind of an outrage. That is hysterical. What a cynical view. I apologize for being cynical, but I've been doing this 47 years, and I've become cynical in white-collar crime matters. I'm cynical that EPA scientists with guns can come in and do a search like this, grabbing ATF and ICE agents. And agents over the years, in my experience, they love this stuff. They don't like risking their lives in a crack house raid, which they treated this like a crack house raid. But they don't mind these white-collar things. It's a highlight of their careers. And the ones who do it right and ethically, God love them. But here, it was over the top and outrageous. And we have the Solicitor General himself coming down here to tell us that that's okay, that we should give over this tape that they didn't want made. When they let Mar-a-Lago, they let ex-President Trump watch that search. Somehow or another, that was not going to be a national security attack issue at Mar-a-Lago, but it was at this little plant in Milwaukee. So forgive me if I'm not 100% on the government side on this. They committed outrageous misconduct, and Judge Sandmiller gave them every chance to make a proper record, and they did not. And this is a review on abuse of discretion, and his decision ought to be affirmed. Thank you. Thank you. Okay. Mr. Feigin. Four minutes, please. Thank you, Your Honor. I don't know that I would need all four minutes. I just want to make two quick points. One, on the reference I made to the search warrant, I was not talking about any of the sealed materials. I'm talking about attachment B to the disclosed search warrant, the list of materials that the agents were entitled to search for, which is, of course, required to be disclosed to the target. I apologize to the court, to counsel, if I misspoke in any way. And the other point I wanted to make was just to emphasize, I think this is a very easy case because we have a piece of evidence that the subject of the subpoena request has told us about, has shown the court still videos from, represents from those still videos and from knowledge of the video that we don't have that there was serious government misconduct, represents that the serious government misconduct would prevent us or should prevent us from prosecuting the case. And I think sunlight's going to be the best disinfectant here. We will be able to determine whether we're comfortable proceeding, and that's by a different set of people. And the grand jury could determine whether it's comfortable allowing the government to proceed by returning an indictment. And I guess I'll end where I started. I just don't think it really serves anyone's purpose to have that information hidden from the government and the grand jury at this point. And if the court has no further questions, I appreciate the court's time. And thank you. All right. I want to thank both Mr. Feigen and Mr. Kravitz. The case will be taken under advisement. Thank you very much.